UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY CASTO,

          Plaintiff,

    v.

ROYAL OAK INDUSTRIES, INC.,
BRONSON PRECISION PRODUCTS
DIVISION, a Michigan corporation,

          Defendant.

_____/

Case No. 5:04-CV-195

Hon. Richard Alan Enslen

**OPINION**

     This matter is before the Court on Defendant Royal Oak Industries, Inc., Bronson Precision Products Division's Motion to Dismiss and the parties' competing Motions for Summary Judgment.[1] Also before the Court is Plaintiff Bobby Casto's Motion to Extend Time to File and to Quash the Affidavit of Jeffrey Belden.[2] The issues have been fully briefed, the Court has carefully reviewed the filings, and finds oral argument unnecessary. W.D. MICH. LCIVR 7.2(d) & 7.3(d).

---

[1] Defendant's dismissal motion has presented matters outside the pleadings and will be reviewed as seeking partial summary judgment. *See* FED. R. CIV. P. 12(c). Furthermore, the nature of the relief sought—an order limiting Plaintiff's damages—is better suited to partial summary judgment than dismissal.

[2] The Court will grant Plaintiff's Motion to Extend Time to File. Plaintiff requested an extension to file his Motion for Summary Judgment beyond the deadline established in the First Amended Case Management Order. The Court will grant Plaintiff's Motion to Extend Time and accept his Motion for Summary Judgment out of time, thereby extending the First Amended Case Management Order's dispositive motion deadline to October 31, 2005. The Court finds Plaintiff has shown good cause, FED. R. CIV. P. 16(b), and consequently, Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment will be denied. Furthermore, the Court will not consider the affidavit of Jeffrey Belden, and thus, need not decide Plaintiff's Motion to Quash. Plaintiff's Motion to Quash the Affidavit of Jeffrey Belden will be denied as unnecessary.

## I.    BACKGROUND

Defendant, through its division and facility located in Bronson, Michigan, supplies automobile parts and component parts to automobile manufacturers.  To improve its business, Defendant determined that it needed to create a metallurgical laboratory to test its products.[3]  In 2002, Defendant hired Plaintiff to work in its metallurgy lab and paid him $35,000 a year.

Plaintiff began work in the metallurgy lab and sometime thereafter, Defendant sought to increase its testing operations.  Plaintiff advised Defendant he would not be able to keep the projected testing pace on his own and urged Defendant to hire another lab employee.  Defendant transferred Susan Proctor, an existing employee, to assist Plaintiff in the metallurgy lab.  Proctor was not certified to perform the tests so she initially only prepared and moved products for testing.  Proctor later obtained the necessary certification and began to complete metallurgy tests.  Defendant also raised Plaintiff's salary to $55,000 a year.

Then two more lab employees were briefly added.  Plaintiff's son, Robert Casto, worked in the metallurgy lab for a summer and Josh Bercaw succeeded him for a short period.  After these employees left, the metallurgy lab was again staffed by Plaintiff and Procter.  At this point Plaintiff's salary grew to $65,000 a year.

Plaintiff worked in the metallurgy lab without incident until he requested leave for an unspecified surgery.  It was later disclosed that the surgery was to remove a benign (feared to be cancerous) growth on Plaintiff's back.  While on leave Defendant continued to compensate Plaintiff

---

[3] Metallurgy refers to the process by which metallic components are produced for end use in consumer products.  The task of the metallurgist is to test the design integrity of the product while accounting for such factors as cost, weight, strength, toughness, hardness, corrosion resistance, and performance in extremes of temperature.

at his regular rate under its Salary Continuation Program.  After the surgery Plaintiff returned to work for intermittent periods, but suffered an infection.  Plaintiff again took leave and continued to receive his salary.  While Plaintiff was out on leave, Defendant purportedly began to struggle financially.  Defendant decided to reorganize its departments and Plaintiff's position was eliminated. Plaintiff was notified of his termination by letter dated August 27, 2004.  The instant action followed on November 9, 2004.

During the course of litigation, Defendant discovered that Plaintiff lied on his employment application.  Plaintiff had submitted a resume that grossly overstated his educational record, exaggerated his military experience, and misrepresented his work experience.

## II.    STANDARD OF REVIEW

The parties' motions are brought pursuant to Federal Rule of Civil Procedure 56.  Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 323.  Since both parties have moved

for summary judgment on overlapping grounds, each litigant will be accorded the status of movant and non-movant when applicable. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552 (6th Cir. 2000); *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 759 (6th Cir. 2004); *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587; however, Rule 56 limits the materials the Court may consider in deciding a motion under the rule to: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (quoting FED. R. CIV. P. 56(c)). Moreover, affidavits must meet certain requirements:

> [A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

FED. R. CIV. P. 56(e). The Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993); *Logan v. Denny's, Inc.*, 259 F.3d 558, 570 (6th Cir. 2001). Thus, in resolving a Rule 56 motion, the Court will not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991), inadmissible expert testimony, *North Am. Specialty Ins. Co. v. Myers*,

111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003); *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994).

## III.   DISCUSSION

Plaintiff's First Amended Complaint charges Defendant with six counts of liability. Specifically, Plaintiff claims that Defendant failed to pay him overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*; discriminatorily discharged Plaintiff because of his age and sex in violation of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS § 37.2101 *et seq*; discriminatorily discharged Plaintiff in violation of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MICH. COMP. LAWS § 37.1101 *et seq*; retaliated against Plaintiff for exercising his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601; and discharged Plaintiff in contravention of Michigan's public policy.[4]

Defendant's Motion for Summary Judgment contends that Plaintiff's FLSA claim must fail because Plaintiff is exempt from receiving overtime compensation.  The Motion also seeks summary judgment on Plaintiff's remaining claims citing deficiencies in Plaintiff's *prima facie* case and asserting legal defenses.  Plaintiff's Motion for Summary Judgment addresses his FLSA claim only and seeks an order entitling him to $157,524.86 in overtime compensation.  Defendant's Motion to

---

[4] In reviewing Plaintiff's state law claims, the Court is bound to apply Michigan law, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), and will first look to the Michigan Supreme Court. If the Michigan Supreme Court has not spoken on a particular issue, the Court will  determine Michigan law based on decisions of the Michigan Court of Appeals, federal courts interpreting Michigan law, and scholarly commentary. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (1995) (internal citations omitted).

Dismiss, construed as seeking partial summary judgment, seeks an order limiting Plaintiff's damages in light of Plaintiff's admitted resume fraud. The Court will address the parties' motions in turn.

A.      **Fair Labor Standards Act**

Under FLSA, non-exempt employees are entitled to compensation for hours worked in excess of 40 hours per week at a rate of one and one-half times their regular rate of compensation. 29 U.S.C. § 207(a)(1). Defendant maintains that Plaintiff is exempt from overtime compensation because he was employed in an executive, administrative, or professional capacity. Plaintiff disputes that contention.[5]

FLSA's section 213(a)(1) provides that employees who work in a bona fide executive capacity, as determined by the Secretary of Labor, are not entitled to overtime compensation.[6] To determine who is considered an exempt employee, the regulations provide a duties test for employees earning more than $455 per week. *See* 29 C.F.R. § 541.600(a). It is undisputed that Plaintiff earned more than $455 per week.

FLSA exemptions are to be "narrowly construed against the employers seeking to assert them." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Mich. Ass'n of Gov'tal Employees v. Mich. Dep't of Corr.*, 992 F.2d 82, 83 (6th Cir. 1993). The application of an exemption is limited to those circumstances plainly and unmistakably within the exemption's terms and spirit. *Arnold*, 361 U.S. at 392. It is the employer who bears the burden of proving that the exemption applies to

---

[5] The parties' motions overlap in this section and are considered as competing motions for summary judgment. *See Lansing Dairy*, 39 F.3d at 1347.

[6] The Court relies on the updated version of the Secretary's regulations, revised August 23, 2004, since Plaintiff was terminated on August 27, 2004 and filed his Complaint on November 9, 2004. *Cf. McDowell v. Cherry Hill Twp.*, No. 04-1350, 2005 WL 3132192, *6 n.7 (D. N.J. Nov. 21, 2005) (citing cases).

the employee in question.  *Mich. Ass'n of Gov'tal Employees*, 992 F.2d at 83.  It is with these principles in mind that the Court considers whether Plaintiff worked for Defendant in an exempt capacity.

### 1.    Executive Exemption

To show Plaintiff was an exempt executive, Defendant must establish that: (1) Plaintiff's primary duties consisted of managing the enterprise or a customarily recognized department or subdivision; (2) he customarily and regularly directed the work of two or more employees; and (3) he has authority to hire or fire other employees or suggest recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees.  29 C.F.R. § 541.100.

The parties agree the metallurgical lab was considered a distinct department within Defendant's facility; however, much is disputed as to whether Plaintiff's primary duties consisted of management and if he regularly directed the work of two or more employees.  Defendant points to Plaintiff's salary disparity with Proctor; his managerial duties; and that he supervised Proctor, his son, and Bercaw.  Plaintiff has submitted evidence that he never actually supervised Proctor—she merely assisted or worked along side him—and that Plaintiff's son and Bercaw's time in the metallurgical lab was extremely limited.  Plaintiff has further shown that his managerial duties may have been highly exaggerated.  The record is also unclear as to whether Plaintiff was meaningfully involved in  decisions concerning other employees.  Consequently, the Court finds material fact issues remain as to whether Plaintiff worked in an executive capacity and will deny summary judgment to both parties on this ground.

### 2.    Administrative Exemption

FLSA's regulations indicate that an exempt administrator's: (1) primary duties consisted of office or non-manual work directly related to Defendant's management or general business operations and (2) requires the exercise of discretion and independent judgment with respect to matters of significance.  *Id.* at § 541.200.  Fact issues prevent summary judgment on this ground as well.

Defendant construed Plaintiff as its metallurgy expert and states he advised Defendant and its customers on related issues.  This claim can be supported by the record.  Plaintiff characterizes his work as mechanically testing products without exercising any real discretion or judgment, an assertion which also could be supported by the record.  Therefore, the Court will deny Defendant summary judgment on this ground to both parties.

### 3.    Professional Exemption

By regulation, an exempt learned professional performs work requiring advanced knowledge in a field of science or learning.  *Id.* at § 541.300.  The regulations further refine the test to employees who: (1) perform work requiring advanced knowledge; (2) the advanced knowledge must be in a field of science or learning; and (3) the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.  *Id.* at § 541.301(a).  "The phrase 'work requiring advanced knowledge' means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work."  *Id.* at § 541.301(b).

Since the Court the cannot definitively say that Plaintiff exercised discretion and judgment concerning the administrative exemption, the Court will deny both parties' summary judgment motions concerning Plaintiff's professional capacity.

### 4.  Estoppel and FLSA Exemptions

Beyond the regulatory exemptions, Defendant has raised a final argument warranting discussion under FLSA.  Defendant contends that because Plaintiff lied on his resume and has misrepresented his qualifications, he should be estoped from claiming he is not an exempt employee because Defendant relied on his representations.

Upon review, the Court is not persuaded that Plaintiff should be estoped from recovering overtime compensation because of his resume fraud.  To hold otherwise would place primary importance on what duties Defendant expected Plaintiff to perform, rather than what he *actually* performed.  Such a holding would run contrary to the regulations since it is the work that Plaintiff *actually* performed that controls the Court's exemption inquiry (*i.e.*, a duties test), not the work Defendant perceived Plaintiff was performing.  *See Id.* at § 541.2.  Thus, the Court will deny Defendant's Motion on this ground and will not estop Plaintiff from claiming non-exempt status under FLSA.

### B.  Elliot-Larsen Civil Rights Act (Age and Sex Discrimination)

Under ELCRA, an employer is forbidden from discharging or otherwise discriminating against an individual with regard to their employment on account of, *inter alia*, an individual's age or sex.  MICH. COMP. LAWS § 37.2202(1)(a).  This sort of claim is subject to the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1972), which

means Plaintiff must present a *prima facie* case of age and sex discrimination before he can go forward with his claim. *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520-21 (Mich. 2001).

To establish a *prima facie* showing of discrimination, Plaintiff must demonstrate that he: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. *Id.* at 521 (quoting *Lytle v. Malady*, 579 N.W.2d 906, 915 (Mich. 1998)). Defendant maintains that Plaintiff has not shown a *prima facie* case of age or sex discrimination. The Court agrees.

Defendant eliminated Plaintiff's position completely and no person was hired to replace him. Plaintiff has not responded to this fatal defect in his case and has otherwise failed to establish the fourth prong of his *prima facie* case. Plaintiff simply jumped right to the third step in *McDonnell Douglas*—refuting Defendant's given discharge reasons as pretext—without addressing the deficiencies in his *prima facie* case. Consequently, Defendant is entitled to summary judgment on Plaintiff's ELCRA claims.[7]

### C.  Persons with Disabilities Civil Rights Act

An employer has violated the PWDCRA if it discharges or otherwise discriminates against an individual with regard to their employment on account of disability. MICH. COMP. LAWS § 37.1202(b). A PWDCRA claimant is subject to the *McDonnell Douglas* burden shifting framework and required to establish a *prima facie* case. *Peden v. City of Detroit*, 680 N.W.2d 857, 862-64 (Mich. 2004) (citing *Hazle*, 628 N.W.2d at 461-64). To make a *prima facie* case under PWDCRA,

---

[7] Defendant also has not provided any direct evidence of discrimination. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997).

"a 'plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute.'" *Kiely v. Heartland Rehab. Servs., Inc.*, 359 F.3d 386, 389 (6th Cir. 2004) (quoting *Chmielewski v. Xermac, Inc.*, 580 N.W.2d 817, 821 (Mich. 1998)).  Plaintiff has failed to establish a *prima facie* PWDCRA claim since the Court finds he is not disabled within the meaning of the Act.

The Act defines a disability as:

> A determinable physical or mental characteristic of an individual which may result from disease, injury, congenital conditions of birth, or functional disorder, if the characteristic: (A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.
>
> * * *
>
> [And is] regarded as having a determinable physical or mental characteristic described [above.]

MICH. COMP. LAWS § 37.1103(d)(i)(A) & (d)(iii).  Michigan courts borrow the Supreme Court's three-step process when reviewing claims of disability under PWDCRA.

> First, [courts] consider whether respondent's [complaint] was a physical impairment. Second, [courts] identify the life activity upon which respondent relies . . . and determine whether it constitutes a major life activity under the ADA.[8]  Third, tying the two statutory phrases together, [courts] ask whether the impairment substantially limited the major life activity.

---

[8] Michigan courts look to federal precedent interpreting the Americans with Disabilities Act ("ADA") for guidance when reviewing claims under PWDCRA.  *See Chmielewski*, 580 N.W.2d at 821.

-11-

*Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 406 (Mich. App. 1999) (quoting *Bragdon v. Abbott*,

524 U.S. 624, 631 (1998)).  The Court accepts Plaintiff's back surgery and infection as a sufficient

physical impairment.  *Id.* at 407.

Next, the Court considers whether Plaintiff's impairment affected a major life activity, such

as interfering with "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking,

breathing, learning and working."  *Id.* (citing *Stevens v. Inland Waters, Inc.*, 559 N.W.2d 61, 63-64

(Mich. App. 1996)).  Plaintiff was unable to work while recovering from surgery and the ensuing

infection.  The Court finds Plaintiff has shown a major life activity was affected.

Finally, the Court must determine whether his impairment substantially limited the affected

major life activity.  The Court finds Plaintiff was not substantially limited.  In making this judgment

the Court is counseled to consider the nature and severity of the impairment, the duration or expected

duration of the impairment, and the permanent or expected permanent effect.  *Id.* (citing *Stevens*,

559 N.W.2d at 64).

> Thus, a disability normally does not include temporary medical conditions, even if
> those conditions require extended leaves from work.  This Court noted that
> "intermittent, episodic impairments are not disabilities, the standard example being
> a broken leg."  The length of the "temporary" impairment need not be brief.
> Although this Court in *Lown* [*v. JJ Eaton Place*, 598 N.W.2d 633 (Mich. App.
> 1999)] did not find it necessary to decide whether a two-year impairment was
> "temporary," this Court cited other cases in which impairments of similar duration
> were considered temporary.  Several courts have held specifically that back injuries
> of limited duration do not constitute a handicap.

*Id*. at 408 (citations omitted).

Therefore, the Court finds that because Plaintiff's back surgery and infection were temporary

impairments, Plaintiff has failed to establish the necessary *prima facie* showing of disability.  To

hold otherwise would extend "the statutory protections available under the [PWDCRA] to

individuals with broken bones, sprained joints, sore muscles, infectious diseases, or other ailments that temporarily limit an individual's ability to work [which] would trivialize th[e Act's] lofty objective" of assuring that "truly disabled but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps." *Id.* at 409 (citations omitted). Accordingly, the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's PWDCRA claim

        **D.**      **Family and Medical Leave Act**

       Plaintiff believes that Defendant retaliated against him for requesting FMLA leave. An employee may establish a *prima facie* case of retaliatory discharge for asserting his rights under FMLA by showing that: (1) he availed himself of a protected right by notifying his employer of his intent to take leave; (2) he was adversely affected by an employment decision, e.g., discharge; and (3) the proximity in time between the employee's request for leave and the adverse action constitutes indirect evidence of a causal connection. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

       Plaintiff never appropriately requested FMLA leave. Plaintiff never explained the nature of his surgery to Defendant and did not disclose whether it was serious. He simply requested vacation time. Furthermore, when asked to substantiate his need for leave, according to Defendant, Plaintiff refused to supply medical information supporting his need for leave. Plaintiff gave Defendant no indication he was entitled to FMLA leave.

       Significantly, Plaintiff has not responded to Defendant's Motion for Summary Judgment on his FMLA claim nor refuted the assertions Defendant made therein. Therefore, the Court is obliged to grant Defendant's Motion and enter summary judgment in its favor on Plaintiff's FMLA claim.

*See Walton v. Ford Motor Co.*, 424 F.3d 481, 488 (6th Cir. 2005) (employee required to give employer enough information to conclude FMLA event has occurred); *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998) (same); *in concert with* FED. R. CIV. P. 56(e) (non-movant must respond to Rule 56 motion or face entry of summary judgment against it).

### E.    Wrongful Discharge Against Public Policy

Ordinarily, employers and employees enjoy an at-will relationship, meaning the employee can quit or be fired at any time—for any or no reason—subject to certain delimited public policy exceptions.  *Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982) (citing *Toussaint v. Blue Cross & Blue Shield of Mich.,* 292 N.W.2d 880 (Mich. 1980)).

Plaintiff contends that he was terminated because of his complaints to management and customers about the quality of product it was supplying its customers.  In order to state a claim of wrongful discharge against public policy, Plaintiff must articulate a law he refused to violate, a duty he was obligated to discharge, or a right he was entitled to exercise.  *Id.* at 711-12.  Plaintiff claims that he disclosed matters which "directly implicate product safety and compliance with highway safety requirements . . . ."  (Pl.'s Br. in Resp. at 18).  However, Plaintiff cites no legislative enactment that he would not violate; no duty he was legally obligated to uphold; and no right he was entitled to exercise.  The Courts perceives, as in *Suchodolski*, "this case involves only a corporate management dispute and lacks the kind of violation of a clearly mandated public policy that would support an action for retaliatory discharge." *Id.* at 712.  Therefore, the Court will grant Defendant summary judgment on Plaintiff's claim of wrongful discharge against public policy.

F.      **Estoppel and Damages**

Defendant's Partial Motion for Summary Judgment asks the Court to limit Plaintiff's damages because it would have terminated Plaintiff due to his resume fraud.  On his resume, Plaintiff represented that he studied engineering and metallurgy at Michigan State University from 1979-83; studied business management at Coastal Community College from 1974-77; and studied statistics at Spring Arbor College from 1985-86.  Plaintiff never studied at any of these institutions.[9] Plaintiff also purported to be a Staff Sergeant in the Marine Corps.  In actuality, Plaintiff was discharged from the Corps as a private first-class. Plaintiff also exaggerated the number of persons he managed for a previous employer and otherwise distorted his work record.  The inaccuracies on Plaintiff's resume rivaled in number its truthful representations.

When a former employee's illicit conduct comes to light post-termination (most likely during discovery) and the employer would have terminated the employee for such conduct anyway, courts can limit the employee's back pay remedy.  *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362-63 (1995).  *McKennon* was premised upon notions of equity and invested courts with discretion to account for each parties' conduct.  *See id.* at 360-62.

Although Plaintiff's fraud is egregious and reprehensible, the Court is not persuaded that the rule of *McKennon* applies to limit Plaintiff's FLSA remedy.  Assuming Plaintiff is found to be a non-exempt employee, he has already done everything necessary to receive overtime compensation under FLSA.  That is, working x amount of hours over 40 hours in a given week.  29 U.S.C. § 207(a)(1).

---

[9] Plaintiff has endeavored to dull the significance of his fraud, contending that although he did not study at the represented institutions, he claimed to have taken classes sponsored by the institutions through community colleges or correspondence.  No institution Plaintiff purports to have attended has any record of Plaintiff in any way, shape, or form.

In other words, Plaintiff has already "banked" those hours and FLSA's provisions that allow him to collect overtime compensation are automatic and mechanical. The Court would essentially strip Plaintiff of property he rightly earned if it applies *McKennon* in the way Defendant suggests.

Furthermore, there is really no logical way to apply *McKennon*. The backpay remedy considered in *McKennon* was an equitable remedy as compensation for hours that the employee never worked, but would have worked absent the discriminatory termination. *Id.* at 362. When after-acquired evidence warranting termination was discovered, the backpay remedy was cut off from the point of its discovery. *Id.* The backpay award in *McKennon* went forward from termination to that cut off point. In this case, there is nothing to cut-off because from the moment Plaintiff was terminated, he was no longer capable of accruing overtime; it would be impossible for him to do so when not working. Plaintiff's remedial cut off point occurred at termination. Thus, the Court finds *McKennon* distinguishable and of little force. Defendant's Motion for Partial Summary Judgment will be denied.

## IV. CONCLUSION

Although the Court cannot say that Defendant did not violate FLSA during Plaintiff's term of employment, it is clear that it did not incur any liability by terminating him. Therefore, the Court will deny Plaintiff's Motions for Partial Summary Judgment and to Quash the affidavit of Jeffrey Belden and grant his Motion to Extend Time to File. The Court will also deny Defendant's Motion to Dismiss, deny its Motion to Strike, and grant in part and deny in part its Motion for Summary Judgment. An Order and Partial Judgment consistent with this Opinion shall issue.

/s/ Richard Alan Enslen

DATED in Kalamazoo, MI:     RICHARD ALAN ENSLEN
    February 10, 2006     SENIOR UNITED STATES DISTRICT JUDGE